## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2016, 7:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Delmar P. Kuchaes
Whiteland, Indiana

ATTORNEYS FOR APPELLEE

Jeffrey J. Mortier
Maggie L. Smith
Blake N. Shelby
Frost Brown Todd LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Delmar P. Kuchaes, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Public Storage, Inc., <br> *Appellee-Defendant.* | December 21, 2016 <br><br> Court of Appeals Case No. 49A02-1603-PL-546 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James A. Joven, Judge <br><br> Trial Court Cause No. 49D13-1203-PL-12284 |

**Kirsch, Judge.**

[1] Delmar P. Kuchaes ("Kuchaes") appeals the trial court's order granting summary judgment in favor of Public Storage, Inc. ("Public Storage") and

denying his motion for partial summary judgment. This case arose when Kuchaes failed to pay rent on his storage unit that he rented from Public Storage. Pursuant to statute and the agreement signed by the parties, Public Storage sent Kuchaes notice that, unless he paid the full amount due within thirty days, the contents of the storage unit would be sold at a public auction. Kuchaes never paid the amount owed on his account, and Public Storage sold the property. Kuchaes raises the following issues for our review:

> I. Whether the trial court properly granted Public Storage's motion for summary judgment because Public Storage complied with the requirements contained in Indiana Code section 26-3-8-12(c);

> II. Whether Indiana Code section 26-3-8-14 is applicable in the present case;

> III. Whether Kuchaes waived any argument based on commercial reasonableness and good faith by failing to raise those issues during the summary judgment proceedings; and

> IV. Whether Public Storage assumed a duty by creating an internal checklist for employees concerning lien procedures and committed negligence when selling Kuchaes's property because the internal checklist was not followed.

We affirm.

## Facts and Procedural History

On June 10, 2009, Kuchaes and Public Storage entered into a rental agreement ("the Agreement") for the rental of a storage unit at Public Storage's facility in

Marion County, Indiana for the storage of Kuchaes's personal property. The Agreement provided, "Renter shall pay Owner as a monthly rent, without deduction, prior notice, demand or billing statement, the sum noted above (plus any applicable tax imposed by any taxing authority) in advance on the first day of each month." *Appellant's App*. at 26. The Agreement also included language, contained in paragraph 6, and appearing in bold and all capital letters, that granted Public Storage a contractual lien on all personal property stored in the unit and stated that, upon a renter's default, Public Storage "shall have all of the remedies of a lien holder available under Indiana law, including without limitation, the right to take possession of said personal property." *Id*. at 27. This paragraph also granted Public Storage "the right to sell that personal property at a private sale or public auction and apply the proceeds thereof to the debt of the renter." *Id*. This paragraph ends with a space for the renter to initial and affirmatively acknowledge that "he understands and agrees to the provisions of the paragraph." *Id*. Kuchaes initialed the paragraph, and he likewise initialized the end of the Agreement, acknowledging that he had read, was familiar with, and agreed to all of the provisions of the Agreement. *Id*. at 28.

[4] After entering into the Agreement, Kuchaes paid his rent for the first few months, but failed to pay his rent on October 1 and then again on November 1, 2009. Public Storage attempted to contact Kuchaes by letter and phone on five different occasions about his failure to pay rent. The letters were sent to the address listed on the Agreement and were returned as "unable to forward." *Id*.

at 76-77. The phone calls resulted in messages that were not returned, and an alternate number that Kuchaes had given was disconnected. On November 17, 2009, Kuchaes paid his rental arrearage for October and November, but failed to pay the late fees associated with the unpaid rent. He also provided Public Storage with written notice of a new mailing address and new email address, but no new phone number. Public Storage tried to contact Kuchaes three times between November 17 and December 1, 2009 regarding the unpaid late fees, but Kuchaes did not respond to messages left.

[5] On December 1, 2009, Kuchaes again failed to pay his rent. Public Storage attempted to contact him eight times in December about the arrearages. On January 1, 2010, Kuchaes again failed to pay his rent, and Public Storage tried to contact him seven different times in January regarding his arrearages for January and December rents and the late fees from October and November. On January 15, 2010, a "Notice of Lien" was mailed to Kuchaes, and the contents of his storage unit were set to go to auction on March 2, 2010 if the arrearages were not paid. *Id*. at 73, 76. Kuchaes contacted Public Storage on January 28, 2010 and told Public Storage that he had paid his rent in December and January and that he would come in the next day with the receipt to prove it. Kuchaes never went to Public Storage or provided proof that he had paid his rent as claimed. Kuchaes later admitted that he never made any rent payments after November 13, 2009. *Suppl. App*. at 19.

[6] Kuchaes again failed to pay his rent on February 1, 2010. Public Storage tried to contact Kuchaes at the beginning of February, but was unable to reach him

until February 15. At that time, Kuchaes told Public Storage that he had mailed his rent check the previous Friday and that, if it was not received by the next day, Public Storage should call him back. Public Storage never received a check.

[7] On February 22, 2010, Public Storage sent Kuchaes another "Notice of Enforcement of Owner's Lien – Notice of Sale" ("the Notice"). *Appellant's App.* at 143. The Notice informed Kuchaes that, unless he paid the full amount due within thirty days, the lien would be enforced and his property would be sold at public auction on March 26, 2010. *Id.* The Notice was sent to Kuchaes via regular mail and certified mail, and Kuchaes received the Notice via regular mail. *Suppl. App.* at 19. The post office eventually returned the certified mail copy on March 22, 2010 as unclaimed. *Id.* at 75. Kuchaes never responded to the Notice, never paid his outstanding balance, and then failed to pay his rent on March 1, 2010, which meant that, at that time, Kuchaes owed late fees from October and November, 2009 and rent from December, January, February, and March, resulting in a default that exceeded 150 days.

[8] Public Storage continued to try to reach Kuchaes by phone eleven different times between February 22, 2010 and March 26, 2010, but did not succeed in reaching him. *Id.* On March 15, 2010, Public Storage advertised the sale of Kuchaes's property in the newspaper. Kuchaes failed to pay his outstanding balance by March 24, 2010, which was thirty days after the Notice was sent, and the contents of Kuchaes's storage unit were sold at a public auction on March 26, 2010. After paying the outstanding balance owed by Kuchaes,

$64.32 remained from the proceeds of the sale, and that amount was forwarded to Kuchaes after the auction. Kuchaes made contact with Public Storage a week after the auction. On April 8, 2010, Public Storage, on behalf of Kuchaes, made contact with the person who bid on Kuchaes's property, and the bidder indicated that he still had some of the boxes from the storage unit and agreed to drop them off at Public Storage for Kuchaes to pick up.

[9] On March 26, 2012, Kuchaes filed a complaint against Public Storage for breach of contract, negligence, and intentional tort and asking for punitive damages. On July 31, 2014, Public Storage filed a motion for summary judgment on all of Kuchaes's claims. Kuchaes filed a cross-motion for partial summary judgment. Thirty-four days after Public Storage filed its motion for summary judgment, on September 3, 2014, the trial court granted Public Storage's motion in its entirety. The next day, the trial court received several filings from Kuchaes, including a brief in opposition to Public Storage's summary judgment, a designation of evidence, and a request for a hearing on all pending motions. Although these filings were considered filed as of September 2, 1014, they were not actually received until September 4, the day after the trial court ruled on the motions. Kuchaes filed an appeal, and a panel of this court reversed, finding that the trial court acted prematurely. The case was remanded with instructions for the trial court to conduct a hearing on the summary judgment motions and to consider all of the parties' timely-filed materials. On remand, a hearing was held, and the trial court entered summary

judgment in favor of Public Storage. Kuchaes filed a motion to correct error, which the trial court denied. Kuchaes now appeals.

## Discussion and Decision

[10] When reviewing the grant of summary judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.,* 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) (citing *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.,* 832 N.E.2d 559, 562 (Ind. Ct. App. 2005)), *trans. denied.* We stand in the shoes of the trial court and apply a *de novo* standard of review. *Id.* (citing *Cox v. N. Ind. Pub. Serv. Co.,* 848 N.E.2d 690, 695 (Ind. Ct. App. 2006)). Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Robson v. Tex. E. Corp.,* 833 N.E.2d 461, 466 (Ind. Ct. App. 2005), *trans. denied.* Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM,* 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. *Id.* (citing *Troxel Equip. Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*).

A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *FLM,* 973 N.E.2d at 1173. Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court. *Id.* We will affirm upon any theory or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

## I. Proper Effectuation and Enforcement of Lien

Kuchaes argues that the trial court erroneously granted summary judgment in favor of Public Storage. He contends that Public Storage did not properly effectuate and enforce the lien on his property because the notice sent to him on February 22, 2010 did not comply with Indiana Code section 26-3-8-12. Specifically, Kuchaes alleges that the notice was not sent by registered or certified mail, the language used in the notice is different from that in the statute, and the notice of public sale was advertised prematurely.

Indiana Code chapter 26-3-8 deals with Self-Service Storage Facilities, and section 26-3-8-11 states that the owner of a self-service storage facility has a lien on the personal property in the storage facility for rent and other charges accrued under the rental agreement and that the lien attaches on the date the

property is placed in the storage facility. Ind. Code § 26-3-8-11(a), (c). The section also provides that every rental agreement must contain language, in bold type, notifying the renter "of the existence of the lien and of the method by which the owner may enforce the lien under this chapter." Ind.Code § 26-3-8-11(c).

[14] Here, paragraph 6 of the Agreement contained this pertinent information in bold and all capital letters and notified Kuchaes that Public Storage had a lien on all of the personal property he stored in the unit he rented and that, in the event of his default, Public Storage had "all of the remedies of a lienholder available under Indiana law, including without limitation, the right to take possession of said personal property" and "the right to sell that personal property at a private sale or public auction and apply the proceeds thereof to the debt of the renter." *Appellant's App*. at 27. Kuchaes, who is an attorney who practiced law for almost forty years, initialed paragraph 6, acknowledging that he understood and agreed to the provisions in the paragraph. *Id*. He also initialed a later paragraph in the Agreement acknowledging that he was familiar with, and agreed to, all of the provisions in the Agreement. *Id*. at 28. "Under Indiana law, a person is presumed to understand the documents which he or she signs and cannot be released from the terms of a contract due to his or her failure to read the documents." *Robert's Hair Designers, Inc. v. Pearson*, 780 N.E.2d 858, 869 (Ind. Ct. App. 2002). We, therefore, conclude that the lien was properly effectuated.

Pursuant to the Agreement, Kuchaes was required to pay rent for his storage unit monthly, on the first of every month. He did so for several months, but failed to pay his rent in both October and November, 2009. Kuchaes later paid the balance of his missed rent for October and November but never paid the late fees that had accrued. He again failed to pay his rent for the months of December, January, February, and March. As of February 2010, Kuchaes owed late fees from October and November 2009 and rent for December 2009 and January and February 2010, which was a default of over 150 days.

Indiana Code section 26-3-8-12 provides, in pertinent part, the proper procedure to enforce a lien effectuated under section 26-3-8-11:

> (a) After a renter has been in default continuously for thirty (30) days, an owner may begin enforcement of the owner's lien under this chapter.
>
> . . . .
>
> (c) An owner enforcing the owner's lien shall send the renter, by registered or certified mail (return receipt requested) addressed to the last known address of the renter, a written notice that includes:
>
> (1) an itemized statement of the owner's claim showing the amount due at the time of the notice and the date when the amount became due;
>
> (2) a demand for payment of the amount due before a specified time at least thirty (30) days after the date of the mailing of the notice;

(3) a statement that the contents of the renter's rented space are subject to the owner's lien;

. . . .

(6) the name, street address, and telephone number of the owner or of any other person the renter may contact to respond to the notice; and

(7) a conspicuous statement that unless the owner's claim is paid within the time stated under subdivision (2), the personal property will be advertised for sale, or will be otherwise disposed of, at a specified place and time, which must be at least ninety (90) days after the renter's default.

(d) Any sale or other disposition of the personal property to enforce the owner's lien must conform to the notice given under subsection (c)(7).

[17] On February 22, 2010, Public Storage sent Kuchaes, via regular mail and certified mail, the Notice, which informed him of the lien that Public Storage had on his personal property. *Appellant's App*. at 143. At that time, Kuchaes had been in default of the Agreement for at least thirty days pursuant to the statute; he had actually been in default for his failure to pay late fees for almost 150 days and in default for failure to pay rent for almost ninety days. The Notice stated that, unless Kuchaes paid the balance due on his account within thirty days, or by March 24, 2010, the lien would be enforced through the sale of his personal property at a public auction on March 26, 2010. *Id*. The date of

the auction was well past the ninety days after the renter's default that was required under Indiana Code section 26-3-8-12(c)(7).

[18] The Notice contained all of the information required under subsection (c), and any slight variance of language from the statutory language did not change the fact that the required pertinent language was included in the Notice. Public Storage sent the Notice to Kuchaes via both regular mail and certified mail, and Kuchaes admitted that he received the Notice through regular mail. *Appellant's App*. at 61-62; *Suppl. App*. at 19. The copy sent by certified mail was returned to Public Storage by the post office as unclaimed on March 22, 2010. *Appellant's App*. at 75. Despite receiving the Notice, Kuchaes never responded and never paid his outstanding balance before March 24, 2010. Public Storage, pursuant to statute, sold the contents of Kuchaes's storage unit at a public auction on March 26, 2010. We conclude that Public Storage complied with the requirements of Indiana Code section 26-3-8-12, and the trial court properly granted summary judgment to Public Storage.

## II. Indiana Code section 26-3-8-14

[19] Kuchaes next contends that the trial court erred when it granted summary judgment because the manner in which Public Storage advertised the public auction of Kuchaes's property did not meet the requirements of Indiana Code section 26-3-8-14. He claims that Public Storage's March 15, 2010 advertisement violated section 26-3-8-14 because the sale was advertised prior to the March 24, 2010 deadline. Kuchaes asserts that, pursuant to the statute,

Public Storage could not advertise the public sale of his property until thirty days after the Notice was sent on February 22, 2010, which would have been March 24, and therefore, the sale could not have occurred until ten days after that date of publication pursuant to the statute.

[20] Although Kuchaes argues that Public Storage's advertisement of the public sale violated Indiana Code section 26-3-8-14, that statutory section did not apply to the present case. That section only applies when the storage facility does not dispose of the renter's property pursuant to the procedures in section 26-3-8-12(c)(7). Section 26-3-8-14 states, in pertinent part:

> (a) After the expiration of the time stated in the owner's notice under section 12(c)(2) of this chapter, *if the personal property has not been otherwise disposed of in a manner described in section 12(c)(7)(A)(ii) or 12(c)(7)(B) of this chapter*, an owner enforcing the owner's lien shall prepare for a sale of the personal property under this section.

Ind. Code § 26-3-8-14 (emphasis added). In the present case, Public Storage disposed of Kuchaes's property in accordance with section 26-3-8-12(c)(7); accordingly, section 26-3-8-14 was not applicable. Therefore, the requirements set forth in section 26-3-8-14 had no bearing on this case, and Kuchaes's arguments concerning that section have no merit.

## III. Commercial Reasonableness and Good Faith

[21] Kuchaes argues that the trial court erred in granting summary judgment in favor of Public Storage because the sale of his property was not conducted in a

commercially reasonable manner or in good faith. He claims that Public Storage was required to hold the sale of his property in a commercially reasonable manner pursuant to Indiana Code section 26-1-7-210(a) and that whether the sale was conducted in such a manner depended on the circumstances of the case and, therefore, raised a question of fact. Kuchaes also contends that Public Storage was required to act in good faith in its dealings with him pursuant to Indiana Code section 26-1-7-203 and that whether that was done was a question of fact. He, thus, asserts that summary judgment was not proper as to these two issues.

[22] Initially, we note that Kuchaes did not raise his arguments as to whether the sale of his property was conducted in a commercially reasonable manner or done in good faith to the trial court in the summary judgment proceedings. "Issues not raised before the trial court on summary judgment cannot be argued for the first time on appeal and are therefore waived." *Yoost v. Zalcberg*, 925 N.E.2d 763, 770 (Ind. Ct. App. 2010), *trans. denied*. Kuchaes has, therefore, waived any argument that the sale was not performed in a commercially reasonable manner or that Public Storage did not act in good faith.[1]

---

[1] Kuchaes, in his reply brief, contends that he did not have the burden to raise his commercially reasonable argument during the summary judgment proceedings because he was not the party moving for summary judgment. Kuchaes is correct that "[t]he initial burden is on the summary-judgment movant to demonstrate the absence of any genuine issue of fact as to a determinative issue," and that at that "point the burden shifts to the non-movant to come forward with contrary evidence showing an issue for the trier of fact." *Gaff v. Ind.-Purdue Univ. Fort Wayne*, 51 N.E.3d 1163, 1165 (Ind. 2016). However, in the present case, Public Storage moved for summary judgment and argued there was no genuine issue of material fact that it properly effectuated and enforced its lien on Kuchaes's property pursuant to Indiana Code section 26-3-8-12, which it supported with designated evidence. *Appellant's App*. at 35-44. Even if Kuchaes did not have the initial

[23] Waiver notwithstanding, Kuchaes's contention is without merit. He asserts that Public Storage was required to conduct the sale of his personal property in a commercially reasonable manner pursuant to Indiana Code section 26-1-7-210(a). "This Article is a consolidation and revision of the Uniform Warehouse Receipts Act and the Uniform Bills of Lading Act." Ind. Code § 26-1-7-101, UCC cmt. However, Kuchaes is not covered by this more general statutory scheme, but instead by the more specific statutory scheme covering "Self-Service Storage Facilities" located in chapter 26-3-8. This statutory chapter applies to "any real property designed and used for the renting of space under a rental agreement that provides a renter access to rented space for the storage and retrieval of personal property." Ind. Code § 26-3-8-9. Although section 26-1-7-210 contained a requirement of commercially reasonable sale, the Self-Service Storage Facilities statutory scheme does not. When language is used in one section of a statute but omitted from others, courts indulge a general presumption that the legislature acted intentionally and purposely in so doing. *Andrianova v. Ind. Family & Soc. Servs. Admin.*, 799 N.E.2d 5, 16 (Ind. Ct. App. 2003). We, therefore, conclude that the trial court correctly found that the commercially reasonable standard did not apply to Public Storage.

[24] Likewise, the same is true with Kuchaes's assertion that Indiana Code section 26-1-1-203 applied to the relationship between he and Public Storage. Section

---

burden to raise the commercially reasonable issue, he later filed a motion for partial summary judgment, in which he had the burden to demonstrate the absence of any genuine issue of fact as to a determinative issue; however, he did not raise the issue at that point either.

26-1-1-203 states, "Every contract or duty within I.C. 26-1 imposes an obligation of good faith in its performance or enforcement." Again, we note that Kuchaes is not covered by this more general statutory scheme, but instead by the more specific statutory scheme covering "Self-Service Storage Facilities" located in chapter 26-3-8. The language in section 26-1-1-203 does not appear in chapter 26-3-8. Therefore, because such language was used in one section of a statute but omitted from others, we presume that the legislature acted intentionally and purposely in so doing. *Andrianova*, 799 N.E.2d at 16. The trial court properly entered summary judgment in favor of Public Storage.

## IV. Internal Checklist

[25]   Kuchaes claims that the trial court erred in granting summary judgment in favor of Public Storage because Public Storage promulgated an internal checklist that detailed procedures its employees were to follow in enforcing a lien against renters. He asserts that, by creating this checklist, Public Storage assumed a duty to its renters to make sure that its employees complied with the procedures contained in the checklist when foreclosing a lien. Kuchaes, therefore, argues that whether Public Storage assumed this duty and the extent of that duty were questions of fact, and summary judgement should not have been granted.

[26]   "Whether a duty exists and the extent of the duty owed is a matter of contract interpretation, and we determine the intent of the parties as determined by the language of the contract." *Hale v. R.R. Donnelley & Sons*, 729 N.E.2d 1025, 1028 (Ind. Ct. App. 2000), *trans. denied*. "If a contract affirmatively evinces an intent

to assume a duty of care, actionable negligence may be predicated upon the contractual duty." *Id.* In the present case, there is nothing in the Agreement that referenced or incorporated the internal checklist into the contractual agreement between Public Storage and Kuchaes. Therefore, as shown in the language of the Agreement, the internal checklist was not evidence of a duty assumed by Public Storage because it was not included in the Agreement. The Agreement set out Public Storage's obligations to Kuchaes, which included compliance with "all applicable law in force at the time the agreement." *Geller v. Kinney*, 980 N.E.2d 390, 397 (Ind. Ct. App. 2012). Therefore, Public Storage was obligated to comply with the applicable law in its Agreement with Kuchaes, but was not obligated under the Agreement to comply with its internal checklist. The trial court did not err in granting summary judgment in favor of Public Storage and in denying Kuchaes's motion for partial summary judgment.[2]

[27] Affirmed.

May, J., and Crone, J., concur.

---

[2] Kuchaes also argues that his damages should not be limited to $5,000 per the limitations of liability provision in the Agreement. Because we conclude today that the trial court did not err in granting summary judgment in favor of Public Storage, we find this argument to be moot.